Carlos Jato, Esq. (SBN 282710)
**LAW OFFICE OF CARLOS JATO**
819 Eddy St
San Francisco, CA, 94109
Tel: (415) 771-6174
Fax: (415) 474-3748
Email:  cgjato@jato-law.com

Attorney for Plaintiff,
DAVID KLEIN

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID KLEIN, | ) Case No.: CV- |
| | ) |
| Plaintiff, | ) |
| | ) **COMPLAINT FOR DAMAGES** |
| vs. | ) |
| | ) |
| | ) |
| FARVA JAFRI, JAFRI LAW FIRM, MYKOLA | ) |
| ISHCHUK, ESMERALDA FAMUTIMI | ) |
| | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendants. | ) |

   DAVID KLEIN (hereafter "KLEIN" or "Plaintiff") complains against Defendants FARVA JAFRI, JAFRI LAW FIRM, MYKOLA ISHCHUK, ESMERALDA FAMUTIMI ("FAMUTIMI") (hereafter jointly "Defendants") and each of them and alleges herein as follows:

<u>JURISDICTION AND VENUE</u>

1.   This court has jurisdiction over this action pursuant to 28 USC 1332(a.)  KLEIN'S domicile and residence is in Florida.  FARVA JAFRI (hereafter "JAFRI") and the JAFRI LAW FIRM are domiciled in New York. MYKOLA ISHCHUK (hereafter "ISHCHUK") is domiciled in New Jersey.  ESMERALDA FAMUTIMI ("FAMUTIMI") is domiciled in New York.

2.   This amount in controversy in this case is more than $75,000.

3.  Venue is proper in this court because a substantial part of the events or omissions giving rise to the claim occurred in this district.  This includes, but is by no means limited, to defendants prosecution of 05629-JPC-JLC, *David Klein v. Jelly Belly Candy Company* and filing of *Klein v. Jelly Belly Candy co.* Index No. 154444/2022 which designated New York County as the place of trial and alleged venue in New York County. In addition, by way of an additional example, defendants were at all relevant times practicing law in this district and the contract by which defendants performed services for plaintiff was negotiated with defendants in New York and payments due under the contract were due in this district.  No district is proper for venue based on domicile, because defendants live in different states.

<u>LEGAL MALPRACTICE</u>

**FIRST COUNT**
**AGAINST FARVA JAFRI, JAVRI LAW FIRM, MYKOLA ISHCHUK**

4.  Each and every Defendant aided, abetted, supported, encouraged, authorized, and ratified the acts and omissions of each and every other Defendant. Each Defendant benefited from and advised the other Defendants in committing the acts and wrongs alleged herein.

5.   JAFRI and ISHCHUK are both attorneys.  Plaintiff is informed and believes that ISHCHUK is licensed to practice law in Minnesota as he has represented that in court pleadings.  Plaintiff is informed and believes that FARVA JAFRI is licensed to practice law in New York State as she has represented that to courts in pleadings filed in state and federal courts.  The JAFRI LAW FIRM, plaintiff is informed and believes based on court pleadings filed by it, is located in Armont, New York, and is in essence a fictitious business name under which and through which ISHCHUK and JAFRI practice law.  ISHCHUK, at all relevant times, was employed by FARVA JAFRI and the JAFRI LAW FIRM.  ESMERALDA FAMUTIMI was, at all relevant times employed by the JAFRI LAW FIRM at least through the filing of the new York action and it is believed later.

6.  Prior to the events giving rise to this complaint plaintiff KLEIN became acquainted with JAFRI.  The prior acquaintance caused KLEIN to relate to JAFRI difficulties and complaints

he had as to how he was treated by the JELLY BELLY CANDY COMPANY (hereafter sometimes referred to as the "JBCC") and difficulties he had doing business because of what he perceived was interference with his business by the JELLY BELLY CANDY COMPANY and because of statements made by the JBCC that placed him in a false light.  Based on what he advised JAFRI, she suggested to him that he file a lawsuit to seek damages. JAFRI agreed to represent him in the law suit he sought to bring against the JELLY BELLY CANDY COMPANY. The main claims that were to be brought, assuming FARVA JAFRI saw them as meritorious and valuable, were for slander and interference with business relationships.

7.  In or about April 2022, Plaintiff, having been assured by JAFRI that his claims were valid and valuable, agreed to have JAFRI bring his claims against the JBCC on his behalf.  Plaintiff and JAFRI entered into an oral agreement that JAFRI and the JAFRI LAW FIRM would pursue plaintiff's claims against the JBCC on a contingency fee basis wherein JAFRI and the JAFRI LAW FIRM (hereafter 'JAFRI" includes the JAFRI LAW FIRM as well as FARVA JAFRI) would receive forty percent of any money obtained for plaintiff.  Plaintiff was to advance the reasonable costs of the suit. There were no other express terms.  The oral contract was in clear violation of New York law which requires a contingency fee contract be in writing and the client first be given an a " statement of client's rights and responsibilities in a form prescribed by the Appellate Divisions, at the initial conference and prior to the signing of a written retainer agreement. "

8.  Defendants thereafter filed a lawsuit for plaintiff against the JBCC in New York state court on May 23, 2022.  Defendants were solely responsible for choosing New York courts as the venue.  The suit was filed under New York Law.  Defendants were solely responsible for alleging that the suit was brought under New York law and based on New York law. Defendants filed the suit under New York Law and in New York even though it could have just as easily filed it in Massachusetts which had a much more favorable laws for the claims to be brought. No attorney acting within the standard of care of attorneys would have brought the claims that JAFRI brought under New York law or in New York courts.

9.  The suit against the JBCC in essence alleged three statements that were alleged to be false and defamatory and caused the plaintiff damages.  Two of three statements were made and known to plaintiff to have been made more than one year before the lawsuit was filed.  It was basic law, law which any attorney acting within the standard of care required of attorneys must have known, that two of the three claims brought in the New York action were barred by the one year statute of limitations in New York.  The lawsuit also alleged a conspiracy between the JBCC and various news media to injure plaintiff (although only the JBCC was a named defendant.)  Those claims were based on the same allegedly false and defamatory statements as the ones just mentioned and were barred by the same statute of limitations. (See NY CPLR 215(3.)  The third claim, while brought within the applicable statute of limitations, was not actionable because the statement was true.   Further, plaintiff would have likely had to prove the defamatory statements were made with malice.  The third statement, published in the Washington Post, stated that plaintiff was not the founder of the JBCC which was founded by Gustav Goelitz and not by plaintiff.  That is a true statement.

10. The JBCC removed the case to the United States District Court for the Southern District of New York based on diversity jurisdiction.  This was extremely predictable although defendants do not appear to have expected it.

11. As any reasonable attorney would have expected and defendants certainly should have, JBCC filed a Motion to Dismiss the complaint. The JBCC tried to meet and confer with JAFRI prior to filing a Motion to Dismiss, as required by the judge handling the matter, but JAFRI never responded to the meet and confer.

12. The JBCC then filed a Motion to Dismiss for failure to state a claim which had a lot of merit to it for the reasons stated above.

13. Instead of opposing the motion to dismiss, JAFRI asked the federal court for permission to dismiss the case and refile it in Massachusetts which has a much longer statute of limitations for defamation and slander claims than New York.  The letter asking for permission to dismiss (or file a motion to change venue even though FARVA JAFRI had herself selected in the first

place) in essence admitted that two of the three claims brought by defendants on behalf of plaintiff were barred by the statute of limitations.  One of the reasons given to change the venue, to give one of many examples of the tactics which defendants employed in representing plaintiff, asked to change venue from New York to Massachusetts for the convenience of the plaintiff who was residing in Florida!  The letter also admitted that the real reason to change venue was to get the benefit of the Massachusetts longer statute of limitations which was self-evidently the real reason for the request. Defendants were apparently not aware that they did not need court permission and could dismiss the case under Federal Rule Civ. P. 41(a)(1)(A)(i) without asking for court permission.  However, while that statute does allow dismissal by the plaintiff without court permission in advance, it subjects the plaintiff who dismisses to the potential, and even the very high likelihood, certainly at least in this case, of being subject to paying the dismissed party's attorney's fees for fees incurred in the dismissed action that was refiled in another venue.  (See FRCP 41(d) and (d)(1.)) As discussed herein, plaintiff has been ordered to pay the JBCC's attorney's fees for the bringing of the New York Action in the amount of $144,602.22  which amount should be paid by defendants.

14. Plaintiff advised JAFRI and defendants in writing that whatever steps they took after dismissing the New York action that JAFRI and defendants should be sure that they take no steps that could later allow JBCC to be awarded its attorney's fees against plaintiff.  JAFRI and defendants totally ignored that instruction and plaintiff has suffered very severe consequences of both their ignoring his wishes and the very many poorly thought-out actions that followed and preceded his plea that they "make sure whatever action is taken won't give [JBCC] the right to make [plaintiff] responsible for [the JBCC'S} legal fees."

15. JAFRI and defendants, should have known, and in fact unquestionably did know, that they were subjecting plaintiff to paying JBCC'S attorney's fees for refiling the claims in Massachusetts.

16. JAFRI and defendants should have known, and in fact unquestionably did know, that the JBCC would remove the Massachusetts action she filed in state court to federal court.  But neither

JAFRI or any member of the JAFRI law firm was able to practice in federal court in Massachusetts so that when the case was removed to federal court they did not and apparently could not file pleadings under their own name for KLEIN in the federal court.  JAFRI and the JAFRI Law firm did continue to be KLEIN'S lawyer, the contract remained in full force and effect, and defendants did continue to advise him behind the scenes, and plaintiff very much relied on defendants to protect his interests and understood that they were doing so.  JAFRI and ISHCHUK were on actual knowledge and clearly understood that up until at least April 28, 2023, KLEIN was very much expecting them to protect his interests regarding the specific matters alleged in this complaint. JAFRI and ISHCHOK both also understood that at least until April 28, 2023 they were representing KLEIN and required to protect his interests regarding the specific matters alleged in this complainant.

17. JBCC removed the Massachusetts case to federal court on October 25, 2022.  On November 1, 2022, JBCC filed a Motion to Transfer the case to California and alternatively a Motion to Dismiss the case.  The fact these two motions would be filed had to be known to JAFRI and ISHCHUK  and before they filed the Massachusetts complaint in state court.

18. On November 1, 2022 Jelly Belly Candy Company's attorneys caused to be served on JAFRI by email and mail the actual motion.  Moreover, JAFRI was told in advance the motion would be filed, and served at least two if not three times with the motion.

19.  Nevertheless, JAFRI and defendants did not cause to be filed or file any opposition to the motion to transfer or dismiss.  Letting that motion to be unopposed is malpractice per se.  This is true in any event, but especially true when JAFRI and defendants knew, or should have known, that a transfer would put the case back in the exact same posture it was in New York.  That being the claims subject to a one-year statute of limitations (this time using California law.)

20. Because no opposition was filed to the Motion to Transfer, on December 30, 2022, the Massachusetts federal court granted the motion.  However, it appears that the court sua sponte

1   vacated its order and asked whether or not the JAFRI'S office had been served with the

2   motion.  It also ordered the parties to advise whether JAFRI'S office received paper copies of

3   the motion.

4   21. Jelly Belly promptly (on December 30, 2022- the same date the order had been issued and

5   vacated) informed the court that it had served JAFRI by email and regular mail with the

6   motion.   At all times alleged in this complaint JAFRI and ISHCHUK were KLEIN'S attorneys

7   on the matter and fully obligated to protect plaintiff's interests.

8   22. After the motion to transfer was granted and the court asked for clarification of whether the

9   motion had been served on JAFRI'S office, and after Jelly Belly's December 30, 2022 letter,

10   JAFRI and ISHCHUK ghost wrote in its entirety a letter, dated January 3, 2022, from Mr.

11   Klein to the federal court stating that he " was not aware of the removal proceedings, or the

12   motion submitted to the court to remove the suit to California."  JAFRI sent the letter to the

13   federal judge.

14   23. The Massachusetts federal court  made short shrift of  the January 3, 2022 letter and promptly

15   reentered its order noting that JAFRI had been served by email and regular mail.

16   24. On January 4, 2023, FARVA JAFRI and/or ISHCHUK ghostwrote another letter for Mr. Klein

17   to the Massachusetts federal judge.  The letter admits that the transfer to California "would

18   effectively result in dismissal" of the complaint.  (In dismissing the complaint later, the

19   California federal judge noted this admission in support of his order granting an anti-slapp

20   motion dismissing the case.)  The January 4, 2023 letter is not evidence and is not sworn.

21   JAFRI argued that JBCC "caused the article [in the Boston Globe] to be edited by the publisher

22   to denigrate [KLEIN'S] accomplishments in founding my company Jelly Belly…"  The letter

23   further states that the article subjected Mr. Klein to ridicule and damaged his reputation and

24   business prospects.   Putting aside the complete failure to timely oppose the motion, which was

far below the standard of care, any claim of evidentiary support for the court to excuse the late claim, should have been in a formal signed and filed document under penalty of perjury.

25. Once the case was transferred to California defendants took no steps to protect Mr. Klein from the inevitable anti-slapp motion that was to and did follow. At no time did defendants tell Mr. KLEIN that he could be subject to the JBCC'S attorney's fees and he had already told defendants in writing that he did not want to proceed with the case if there was a chance he could owe JBCC's attorney's fees.

26. As the letter JAFRI ghostwrote for Mr. KLEIN stated, transfer of the case "would effectively result in dismissal" of the lawsuit. The remaining statement and claim which was not on its face barred by the statute of limitations was the correction to the Washington Post article. As previously noted, there was no arguable claim there because the correction merely states a true fact- that DAVID KLEIN did not found the JBCC.

27. JBCC filed an anti-slapp motion against the complaint. JAFRI and ISHCHUK ghostwrote the opposition and were solely responsible for its contents. If there was a basis for opposing the motion, JAFRI and ISHCHUK certainly should have filed declarations with evidentiary facts supporting the opposition. There were numerous other defects with the opposition that JAFRI and ISCHUCK ghostwrote for plaintiff.

28. The opposition states that the court can **receive evidence** in the form of " 'affidavits, declarations, and their equivalents" which is very true. But then the opposition assumes that allegations in the complaint are evidence, but they are not. The opposition states, "this court should accept Klein's evidence submitted here…" but it submits no evidence whatever. The opposition states Mr. Klein "easily meets his burden of proof" but that statement lacked any merit in light of the fact Mr. Klein submitted **no evidence whatever.** Assuming, as defendants

did, that Mr. Klein could simply rely on his complaint and/or that the complaint constituted admissible evidence is far below the standard of care.

29. The opposition states that Mr. Klein has never claimed to be the founder of the Jelly Belly Candy Company, yet the complaint JAFRI drafted states in paragraph 33 states, "Mr. Klein founded the Jelly Belly Candy Company…"

30. The opposition was a cut and paste from a different opposition for a different client because for example it states "the motion should be denied because Tapia's claims do not arise…" No one named "Tapia" is involved in this case.

31. Based on the failure to assert any cognizable opposition, the motion was granted.   The court stated that the only claim it would even consider allowing Mr. Klein to go forward on was the September 20, 2021 Washington Post correction and only for tortious interference.  But the California federal judge stated, very accurately, that there were no facts that Mr. Klein could later allege that would support a tortious interference claim based on the September 20, 2021 correction.  The California federal court judge also noted that the opposition JAFRI and ISHCHUK drafted for plaintiff "does not mention…let alone address" a tortious interference claim based on the September 20, 2021 Washington Post article.

32. The California federal court awarded the JBCC $144,602.22, against Mr. KLEIN  due to the filing of the action in New York and then its refiling in Massachusetts before transfer to California.  In granting those fees the court stated it did so "in light of plaintiff's admitted forum shopping…"

33. The Anti-Slapp motion was granted on March 8, 2023. Later the actual attorney's fees awarded to the JBCC was $131,806.73  for the pursuit of the case in California in violation of the Anti-Slapp laws. Defendants also ghostwrote KLEIN'S opposition to the motion for fees.

34. It was below the standard of care required of attorneys to allow the action to proceed in Massachusetts or be transferred to California for the reasons stated above which include, but are not limited to, (1) a prevailing defendant on an anti-slapp motion is entitled to attorney's fees and the result of the motion was mainly conceded or virtually certain to occur (2) KLEIN had advised defendants he wanted no actions taken which could result in him owing attorney's fees to the JBCC (3)  considering the potential benefits and considering the risks it should never have been pursued especially in California.

35. As a direct, proximate and legal result of defendants' negligence, KLEIN has suffered a judgment against him in the UNITED STATES DISTRICT COURT for the EASTERN DISTRICT OF CALIFORNIA in the sum of $131,806.73  as fees awarded against him as a result of the ANTI-SLAPP motion.

**SECOND COUNT**
**BREACH OF FIDUCIARY DUTY**
**(AS TO ALL DEFENDANTS)**

36. Plaintiff incorporates herein all of the allegations, averments, and matters contained in paragraphs 1-34  as if set forth at length herein *in haec verba*

37. Defendants had a fiduciary duty to observe and abide by KLEIN'S instructions but failed to do so causing KLEIN the damages alleged herein.

38. KLEIN was extremely distressed and upset by being subject to the huge award of fees that defendants' actions, in failing to follow his explicit instructions, caused him.

WHEREFORE plaintiff prays judgment as follows:

1. The sum of at least $276,408.95 plus interest thereupon until paid in full;

2. General damages for emotional distress only on the second count.

3. Costs of suit herein incurred;

4. Such other and/or further relief as is just and proper;

March 4, 2024

_/s/ CARLOS JATO_
CARLOS JATO
Attorney for Plaintiff
DAVID KLEIN